IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
07/26/2017

| | | |
|---|---|---|
| IN RE: | § | |
| WILDWOOD PROPERTY OWNERS | § | CASE NO: 82-04155 |
| ASSOCIATION | § | |
| Debtor(s) | § | |
| | § | CHAPTER 11 |
| | § | |
| WILDWOOD PROPERTY OWNERS | § | |
| ASSOCIATION | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 14-3292 |
| | § | |
| MARY J. BORDELON, *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

This Memorandum Opinion and accompanying Order resolves Wildwood Property Owner's Association's (the "Association") and Teri Byrd's cross motions for summary judgment on the Association's declaratory judgment claim. All defendants except Byrd have entered into a settlement agreement with the Association. Byrd is the sole remaining defendant in this adversary proceeding.

### Background

The Association filed this adversary proceeding on September, 9, 2014. (ECF No. 1). The suit alleged violations of a confirmed chapter 11 plan approved by the Court on September 23, 1985. (ECF No. 3-1). The Association sought a declaratory judgment regarding the authority of the Association to (i) file amendments to the developer's dedications and restrictions, and (ii) modify, collect, or maintain fees and assessments from property owners in the Wildwood development. (ECF No. 3 at 8; ECF No. 38 at 10). On November 19, 2015, the Court issued an Order abating this adversary proceeding in order to allow time for the Association to pursue settlement negotiations with the defendants. The Court terminated the abatement on April 4, 2017. Trial is set in this case for August 2, 2017. The Association and

Byrd re-urged their respective motions for summary judgment initially filed prior to the abatement.  It is these motions that are the subject of this Memorandum Opinion.

*Creation and Chapter 11 Case*

Wildwood is a real estate development initially developed by George Norman, Guy Dalrymple, Charles Kelly, Vernon Hicks, and Gus Becker ("Developers") in 1962.  (ECF No. 3 at 5).  At the time of development, Developers formed a homeowners association to govern Wildwood.  In 1974, the homeowners association was sold to Larry Parker.  (*Id.*).  During Parker's ownership, Wildwood expanded from approximately 2,000 acres to 2,353 acres.  Parker operated the homeowner's association through an entity known as Recreation World, Inc.  Parker owned 100% of the equity in Recreation World, Inc.  (*Id.* at 6).

In 1982, Recreation World, Inc. was struggling to operate Wildwood on a break-even basis and sought relief under Chapter 11 of the Bankruptcy Code.  Two committees were appointed in the Chapter 11 case, one to represent residential property owners of Wildwood and one to represent nonresidential property owners.  (ECF No. 3 at 6).  Additionally, an interim board of directors was appointed to operate the homeowner's association during the case.  (*Id.*).

In 1985, the Court issued an Order confirming Recreation World, Inc.'s chapter 11 plan.  (ECF No. 3-1).  The plan provided for, among other things, the creation of the Association to assume the Debtor's authority to manage the Wildwood development and assume the Debtor's duties and responsibilities to property owners.  (ECF No. 3-4 at 6).  The plan vested the newly created Association with the power to act with sufficient authority to meet the responsibilities it assumed under the Plan.  *Id.*

*State Court Litigation*

In November 2011, the state court plaintiffs, including Byrd, filed an action in Texas state court seeking a declaratory judgment that the Association does not have the authority to amend deed restrictions or levy and collect maintenance fees from defendants.  (ECF No. 38-1 at

157).  The filing of the state court litigation forms the basis for this adversary proceeding.  An

excerpt from the state court plaintiffs' motion for summary judgment is reproduced here:

> Movants seek a summary judgment on the following issues:
>
> 1.  Recreation World, Inc. did not have the right or authority to file amendments to the developers' dedications and restrictions or new dedications or restrictions as listed herein which affected the title to Plaintiffs properties.
>
> 2.  The Wildwood Property Owners Association did not have the right or authority to file amendments to the developers' dedications and restrictions or new dedications or restrictions as listed herein which affected the title to Plaintiffs properties.
>
> 3.  The Wildwood Property Owners' Association did not have the right to modify, collect or maintain fees or assessments from Plaintiffs in association with their ownership of the Plaintiff's properties.

(ECF No. 38-1 at 157).

The state court plaintiffs argued that these rights were reserved for the developers, and

development rights were never conveyed, either to Recreation World, Inc. or to the Association,

through the plan.  (*Id.* at 153).  The Association participated in the state court lawsuit, offering

Recreation World, Inc.'s chapter 11 plan from 1985 as evidence in support of its summary

judgment motion.  (ECF No. 38-1 at 170).  On June 2, 2014, the District Court for the 88th

Judicial District of Hardin County, Texas, issued an Order granting summary judgment in favor

of the plaintiff property owners.  (ECF No. 3-3).  The state district court found that neither

Recreation World, Inc., nor the successor entity Wildwood Property Owners Association "held

the power of a developer to amend dedications or restrictions or restrictive covenants"

concerning the homeowner's properties.  (*Id.*)  Additionally, the state district court found that the

Association did not have the right to modify, collect or maintain fees or assessments from

homeowners.  (*Id.*).  In response, the Association filed this adversary proceeding, seeking a

determination that the state court plaintiffs violated Recreation World, Inc.'s chapter 11 plan by

filing the state court declaratory judgment action.

**Jurisdiction and Authority**

Article XI of Recreation World, Inc.'s chapter 11 plan and paragraph 12 of the Court's Order confirming the plan provide that the Court will retain jurisdiction to "enforce and interpret the terms and conditions of [the] plan and to accomplish any other purpose for which relief may be granted to the Debtor under the Bankruptcy Code which may be necessary to effect the orderly consummation of this Plan." (ECF No. 3-1 at 5). The plan has been effective for over thirty years. All transactions contemplated by the plan have been executed. Whatever the effect of the retention of jurisdiction provision in the plan from confirmation through consummation, it is inapplicable at this time. Nevertheless, the Court has continuing jurisdiction and authority to interpret and enforce its own prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Baker v. Baker (In re Baker)*, 593 F. App'x 416, 417 (5th Cir. 2015) ("A bankruptcy court plainly has jurisdiction to interpret and enforce its own prior orders.").

The scope of this jurisdiction is limited. In her pleadings, Byrd describes at length conduct undertaken by the board of directors that allegedly violates the Association's by-laws and articles of incorporation.[1] (ECF No. 45 at 9-13). The Court lacks jurisdiction to rule on the merits of these claims. The Court does not have jurisdiction to adjudicate all disputes that concern the Association's corporate governing documents merely because the Association was formed pursuant to a plan of reorganization. Post-confirmation jurisdiction is generally "restricted to protecting the confirmation order, preventing interference with the reorganization and aiding the plan's execution." *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, 201 B.R. 376 (E.D. Pa. 1996); *see In re U.S. Brass Corp.*, 301 F.3d 296, 304 (after confirmation, "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan."). The Court issues this Memorandum Opinion and

---

[1] In addition to several factual allegations, Byrd asserts a legal argument that, even if the Association has the right to amend restrictive covenants, that right must be exercised by the property owners, not the board of directors. Resolving this legal issue is beyond the scope of the Court's jurisdiction.

accompanying Order only to resolve two narrow issues on which Byrd has taken legal positions manifestly inconsistent with prior Orders of the Court.  It is necessary to resolve these issues in order to vindicate the Court's prior Orders.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).

### Motion for Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence to support an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Texas, L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012).  "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot

produce admissible evidence to support the fact.[2]   Fed. R. Civ. P. 56(c)(1).  The Court need

consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ.

P. 56(c)(3).  The Court should not weigh the evidence.  *Wheat v. Florida Par. Juvenile Justice*

*Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016).  A credibility determination may not be part of the

summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).

However, a party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).  Moreover,

the Court is not bound to search the record for the non-moving party's evidence of material

issues.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

 "The moving party bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the record which it believes demonstrate

the absence of a genuine issue of material fact."  *Nola Spice Designs, L.L.C. v. Haydel*

*Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The evidentiary support needed to meet the

initial summary judgment burden depends on whether the movant bears the ultimate burden of

proof at trial.

 If the movant bears the burden of proof on an issue, a successful motion must present

evidence that would entitle the movant to judgment at trial.  *Celotex Corp. v. Cattrett*, 477 U.S.

317, 326 (1986).  Upon an adequate showing, the burden shifts to the non-moving party to

establish a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-

24.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed.

R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324.  The non-moving party must also "articulate the

manner in which that evidence supports that party's claim."  *Duffie v. United States*, 600 F.3d

362, 371 (5th Cir. 2010).  Even if the movant meets the initial burden, the motion should be

---

[2] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

The facts in this case are essentially undisputed. The parties' dispute surrounds the legal effect of the terms of Recreation World, Inc.'s plan of reorganization. The Association seeks a declaratory judgment determining the scope of the authority it obtained pursuant to the plan.

In order to determine the rights and authority of the Association, the Court must examine Recreation World, Inc.'s chapter 11 plan and its attached exhibits.

Recreation World, Inc.'s plan of reorganization formed the Association and equipped it with all authority and rights previously belonging to the debtor. The plan states, "[a]pproval of the plan shall constitute consent and approval by each property owner to the authority and rights of the Association as set out in its by-laws, attached hereto as exhibit A, and made part hereof for all purposes." (ECF No. 3-4 at 10). The articles of incorporation for the Association were attached to the plan as exhibit B.

Though the text of the plan references certain, more significant rights transferred to the Association, the by-laws and articles of incorporation set them forth in detail. (ECF No. 3-4 at 10). In Article IV of the by-laws, entitled "Board of Directors: Right of Assessment, Powers, and Duties," the following rights and powers are addressed:

1. Right of Assessment

   a) The Board shall have the authority to levy and collect assessments
      from Members to be used as authorized by the declaration for the

improvement and maintenance of properties, services, and facilities devoted exclusively to the purpose of promoting the recreation, health, safety, and welfare of the owners of the properties . . .

2. Powers

The Board shall have power to:

h) Enforce all rights, covenants, restrictions, and agreements applicable to the properties and the owners thereof, and to common properties, as provided for in the declaration or which are now or may hereafter be contained in or authorized by the articles of incorporation or the bylaws.

(ECF No. 3-4 at 21-22).   Article Four of the Association's articles of incorporation states, in pertinent part:

The purposes for which the corporation is organized are:

(2) To exercise all of the rights, powers, and privileges and perform all of the duties and obligations attributable to the owner of the common properties of Wildwood Resort City as set forth in the declaration and protective covenants contained in the instruments of restrictions concerning said subdivision . . .

(3) To amend, modify, alter or repeal, in whole or in part, any and all of such instruments of restrictions and the provisions thereof affecting the subdivision of Wildwood Resort City.

(ECF No. 3-4 at 38).   Byrd's argument that the right to amend restrictive covenants belongs solely to the developers is derived from an instrument executed March 27, 1964, styled Dedication & Restrictions, Wildwood City Resort.[3]   The instrument generally sets forth the restrictions governing the land in the development.   By way of example, paragraph 3 dictates that "no noxious or offensive activity shall be carried on upon any lot nor shall anything be done or permitted thereon which may be or become an annoyance or a nuisance to the neighborhood." (ECF No. 38-1 at 316).   The dedicatory instrument identified the Developers as George Norman,

---

[3] The parties are in agreement that the instrument referenced in Article Four paragraph (2) of the articles of incorporation is the same instrument that was executed March 27, 1964.

Vernon Hicks, Charles Kelley, Gus Becker, and Guy Dalrymple (ECF No. 38-1 at 315). It further described the developers as the "record owners of the lots." (*Id.*).

Byrd's argument hinges entirely on paragraph 21 of the 1964 dedication and restriction document. Though only the final sentence is relevant to Byrd's argument, the entire paragraph is reproduced here to provide context:

> All of the restrictions and covenants herein set forth shall continue and be binding upon Developers, their heirs, executors, administrators, successors or assigns, and upon the purchasers of said lots, for a period of thirty five (35) years from the date this instrument is filed for record in the office of the County Clerk of Hardin County, Texas, and shall automatically be extended thereafter for successive periods of ten (10 ) years, provided, however that the owners of the legal title to seventy five per cent (75%) of the lots as shown by the records of Hardin County, Texas, may release all of the lots herby restricted from any one or more of said restrictions or covenants at the end of the first thirty five (35) year period and thereafter by executing and acknowledging any appropriate agreement or agreements in writing for such purpose and filing the same for record in the manner then required for the recording of such instruments. **These restrictions may be amended by Developers.**

(ECF No. 38-1 at 319) (emphasis added). Byrd argues that the right to amend the restrictions set forth in the dedication instrument is a right exclusive to the developers, and consequently, the Association may not take such action. (ECF No. 45 at 6) ("The Developers did not convey 'developer' status to Recreation World, Inc. Because Recreation World, Inc. never had 'developer' status, 'developer' status was never an asset of the bankruptcy estate. Since 'developer' status was not an asset of the estate . . . [the debtor] could not covey that right to [the Association] . . . .").

The Court will first address whether under the terms of Recreation World, Inc.'s chapter 11 plan the Association has a right to modify, collect, or maintain fees or assessments from property owners in association with their ownership of property in the Wildwood development. The Court will then address whether the Association has a right to amend dedications, restrictions, or restrictive covenants as set forth in the dedication instrument.

9 / 12

*Charging Assessments*

It is difficult to understand the legal basis upon which Byrd sought a declaratory judgment in state court that the Association is powerless to charge and collect assessments. As set forth above, the plan, bylaws, and articles of incorporation are unambiguous on this point. (ECF No. 3-4 at 10, 21, and 39). Nevertheless, in state court Byrd pursued and obtained a declaratory judgment holding that the Association "did not have the right to modify, collect or maintain fees or assessments from [the homeowner's]." (ECF No. 3-3). Despite her actions to the contrary in state court, Byrd now acknowledges that the Association has the right under the Plan to collect and maintain fees and assessments as allowed by the restrictive covenants. (ECF No. 45 at 14) (the state court order "does not contradict the plan except to the extent that it would prevent [the Association] from collecting and maintaining fees and assessments . . . ."). The relief Byrd sought and obtained in state court is manifestly inconsistent with the rights of the Association as established by the plan, by-laws, and articles of incorporation. (ECF No. 3-4 at 11) ("The Association shall succeed to the Debtor's rights to charge and collect maintenance fees.").

*Amending Restrictive Covenants*

Byrd acknowledges that the Association succeeded to all of the rights of Recreation World, Inc. pursuant to its plan of reorganization and the Association's articles of incorporation and by-laws. (ECF No. 45 at 6). However, Byrd argues that the rights reserved for developers were not rights held by Recreation World, Inc., and therefore are not rights to which the Association succeeded. (*Id.*). Specifically, Byrd argues that the right to amend the restrictive covenants is not a right granted to the Association. (*Id.*).

In the state court litigation, Byrd alleged that the board of directors of the Association acted without authority to amend restrictive covenants. (ECF No. 45 at 13). The state court

order held that the Association "did not have the right or authority to file amendments to the developers' dedications and restrictions."

Reviewing the Association's formation documents, there are several provisions that evidence the Association's authority to amend the restrictions set forth in the dedication instrument.  Most apparent is Article Four paragraph (3) of the articles of incorporation, which states that one of the purposes for which the Association was organized was "to amend, modify, alter or repeal, in whole or in part, any and all of such instruments of restrictions and the provisions thereof affecting the subdivision of Wildwood . . . ."  (ECF No. 3-4 at 38).   The final paragraph of Article Four states that "the forgoing purposes shall be construed as both purposes and powers . . . ."  (*Id.*).  It is unambiguous that the Association is both purposed and empowered to amend the development restrictions.

*Res Judicata*

Res judicata applies in the bankruptcy context.  *Brown v. Felsen*, 442 U.S. 127, 132 (1979).  An Order confirming a plan of reorganization is entitled to res judicata effect.  *Stoll v. Gottlieb*, 305 U.S. 165, 170-71 (1938).  "Federal courts have consistently applied res judicata principles to bar a party[4] from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order."  *First Union Commercial Corp. v. Nelson, Mullins, Riley, and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1315 (4th Cir. 1996).   The Association's authority to maintain and collect assessments and its power to amend the restrictions and covenants are not subject to collateral attack by Byrd.

---

[4] One of the plaintiffs in state court who is also a former defendant in this adversary proceeding was a member of the resident property owner committee in Recreation World, Inc.'s chapter 11 case.  (ECF No. 55 at 4).

## Conclusion

This matter was set for trial on August 2, 2017 at 9:00 a.m.  Rather than proceeding with the trial, the Court will conduct a Case Management Conference.  At the conference, the parties should be prepared to discuss whether there are any remaining issues to be resolved at trial.  If there are no remaining issues, the Court will issue a final judgment consistent with this opinion. If there are remaining issues, the Court will schedule the trial.  No witnesses need to attend the August 2, 2017 Case Management Conference.

SIGNED **July 25, 2017.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE