



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
02/07/2018

| | | |
|---|---|---|
| IN RE: | § | |
| WILDWOOD PROPERTY OWNERS | § | CASE NO: 82-04155 |
| ASSOCIATION | § | |
|     Debtor(s) | § | |
| | § | CHAPTER 11 |
| | § | |
| WILDWOOD PROPERTY OWNERS | § | |
| ASSOCIATION | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 14-03292 |
| | § | |
| MARY J. BORDELON, *et al* | § | |
|     Defendant(s) | § | |

### MEMORANDUM OPINION

*Courts to determine the rights of parties are an integral part of our system of government. It is just as important that there should be a place to end as that there should be a place to begin litigation.*

***Stoll v. Gottlieb***, **305 U.S. 165, 172 (1938)**.

    This litigation has settled. The parties need to put down their swords, live peaceably with their neighbors, and end this multi-decade fight.

### Background

    Wildwood Property Owners Association ("Wildwood") entered into a Settlement Agreement with a group of Homeowners in June 2016. Wildwood filed a motion to enforce the terms of the Settlement Agreement, arguing Paragraph 12 requires dismissal of the pending bankruptcy adversary proceeding and state court lawsuit. The Homeowners filed a cross motion to enforce, disputing Wildwood's interpretation of the Settlement Agreement and claiming that dismissal is not required.

Wildwood's motion to enforce is granted. The terms of the Settlement Agreement require that the homeowners dismiss the adversary proceeding and state court suit.

Wildwood Resort Community was established in 1962. (ECF No. 60 at 2). In 1985, the Community filed for chapter 11 bankruptcy, which resulted in this Court confirming the Community's Plan of Reorganization. (ECF No. 38-1 at 9–12). In 2011, a dispute arose between Wildwood and the Homeowners living in the Community regarding Wildwood's authority to amend deed restrictions and collect maintenance fees. (ECF No. 60 at 2). This dispute led the Homeowners to file a state court lawsuit in which they obtained a 2014 judgment declaring that Wildwood lacked the authority to amend deed restrictions and collect maintenance fees. (ECF No. 60 at 3). Wildwood consequently alleged that the state court's judgment conflicted with the terms of its confirmed Plan and initiated an adversary proceeding against the Homeowners for violating this Court's confirmation order. (ECF No. 60 at 3).

The parties ultimately entered into the Settlement Agreement in an effort to end litigation. (ECF No. 60 at 3–4). The terms of the Settlement Agreement mandate that the parties mutually revise Wildwood's Articles of Incorporation, Restrictive Covenants, and Bylaws. (ECF No. 60 at 4). Ideally, the Homeowners would vote on the amendments. If the amendments were approved by 67% of the residents, the pending state court proceeding and this adversary proceeding would be dismissed with prejudice. (ECF No. 60 at 4). In the event that the amendments were not approved in the first vote, the current versions of Wildwood's founding documents would remain in effect until Wildwood resubmitted the proposed changes for a second vote. Regardless of the second vote's outcome, the Settlement Agreement requires the parties to dismiss, with prejudice, this adversary proceeding and the pending state court suit within seven days of the second vote's conclusion. (ECF No. 60 at 4). In May 2017,

Wildwood presented its revised founding documents to the Homeowners for the first vote. (ECF No. 60-2 at 1). Only 200 ballots were received and the Association failed to reach the required 67% approval required under the Agreement. (ECF No. 60-2 at 1). A second vote took place in June 2017 that yielded 248 ballots from the Homeowners, again falling short of the Settlement Agreement's requirements for adoption. (ECF No. 60-3 at 1).

Wildwood believes that it satisfied its obligations under the Settlement Agreement by conducting two votes, requiring the Homeowners' suits to now be dismissed. (ECF No. 60 at 5). The Homeowners dispute Wildwood's assertion, claiming that a quorum is a prerequisite to the validity of any vote. (ECF No. 61 at 10). Since neither vote achieved a quorum, the Homeowners allege that, in effect, no vote has taken place and no dismissal of their pending lawsuits is required. (ECF No. 61 at 10).

## Jurisdiction

The Court has continuing jurisdiction and authority to interpret and enforce its own prior orders. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Baker v. Baker (In re Baker)*, 593 F. App'x 416, 417 (5th Cir. 2015) ("A bankruptcy court plainly has jurisdiction to interpret and enforce its own prior orders."). The Order confirming Wildwood's Plan provided that the Court retain jurisdiction "until the plan is fully consummated and all claims are paid, or all distributions and a final accounting has been made for all purposes, including . . . [t]he *resolution of any pending adversary proceeding* to a final and unappealable order or dismissal with prejudice." (ECF No. 38-1 at 5) (emphasis added). Although Wildwood's bankruptcy estate has been administered, the terms of the Order require that the Court retain jurisdiction over adversary proceedings such as the current dispute. (ECF No. 38-1 at 5).

## Analysis

The Settlement Agreement is "governed by, and will be construed and enforced in accordance with Texas law." (ECF No. 60-1 at 7). Texas courts hold that the goal of contract interpretation "is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461 (Tex. App.—Houston [14th Dist.] June 11, 2013, no pet.). A contract should be read so as not to render any of its provisions meaningless. *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The Court should strive "to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Id*. The Court should also "avoid a construction that is unreasonable, inequitable, and oppressive." *NuStar*, 402 S.W.3d at 466 (citing *Frost Nat'l Bank v. L & F. Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam)).

If a contract is unambiguous, parol evidence is not considered. This prevents an interpretation that conflicts with the plain language of the contract. *Id*. "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 393. A "contract is unambiguous if it can be given a certain or definite meaning as a matter of law." *Id*. (citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012)). Additionally, "a contract is not ambiguous simply because the parties advance conflicting interpretations." *Id*.

The sole issue presented to the Court in this proceeding is whether the requirements of Paragraph 12 of the Settlement Agreement have been satisfied. Paragraph 12 is reproduced below:

> 12. The parties agree to jointly support and encourage the property owners to adopt the aforementioned amended restrictive covenants in an effort to obtain sixty-seven percent (67%) of the property owners' approval of the amendments. In the event that the proposed amendments fail to obtain the requisite sixty-seven percent (67%) approval of the property owners, the Association and the Homeowners agree to resubmit the proposed amendments for a second vote of the members and again encourage the members to adopt the proposed amendments. In the event that the proposed amendments fail to pass on the second attempt, the Association agrees to continue to regulate the subdivision by the Restrictive Covenants currently in existence until new covenants are adopted by vote of sixty-seven percent (67%) of the members. The parties further agree that regardless of the outcome of the second vote of the members that the matter will be dismissed with prejudice in both the State Court Lawsuit and Bankruptcy Lawsuit within seven (7) days of the announced result of the first vote or if taken, the second vote.

(ECF No. 60-1 at 4).

The Settlement Agreement requires that Wildwood satisfy two obligations: (i) encourage the Homeowners to adopt the changes to the amended restrictive covenant by obtaining 67% of the Homeowners' approval, or, if that fails, (ii) hold a second vote and encourage the Homeowners to adopt the amendments. (ECF No. 60-1 at 4). After the second vote, the Agreement is unequivocal: "regardless of the outcome of the second vote of the members . . . the matter will be dismissed with prejudice in both the State Court Lawsuit and the Bankruptcy Lawsuit within seven (7) days." (ECF No. 60-1 at 4). Consistent with the standard in *Corker*, the requirements in Paragraph 12 of the Agreement can be given "a certain or definite meaning as a matter of law." 650 S.W.2d at 393. As a result, the Settlement Agreement is unambiguous on its face and contrary parol evidence may not be considered to interpret the Agreement. *See NuStar*, 402 S.W.3d at 466.

The Homeowners' argument is based solely on parol evidence, claiming that the Association's Bylaws require a quorum of both Homeowners and Non-homeowners as a condition precedent to a valid vote. (ECF No. 61 at 5). The Homeowners do not dispute that two votes were taken. They seek to import provisions into the Settlement Agreement that the vote will not be valid if a quorum is not present. Although it is true that the *outcome* of the vote may not be binding without a quorum, the *fact* that two votes occurred is indisputable.

The Homeowners suggest that the portion of the Bylaws that sates, "in order to conduct business at any meeting, a quorum of at least ten percent (10) (in person or by proxy) of the shares represented by the members of each class shall be required for the conduct of business" should be read into the requirements of Paragraph 12. (ECF No. 61 at 5). However, the Settlement Agreement is unambiguous. Parol evidence such as the Bylaws may not be imputed to interpret it. *NuStar*, 402 S.W.3d at 466. There is no requirement in the Settlement Agreement that a quorum is a prerequisite to a vote, and at no point does the Settlement Agreement import or refer to any other provision set forth in the Bylaws. (*See* ECF No. 60-1 at 4). The Settlement Agreement simply states that 67% of the property owners must approve of the amendments before they go into effect; it is silent regarding a number required to have a valid vote. (ECF No. 60-1 at 4). As such, the Homeowners' attempt to impute the quorum requirement from the Bylaws into the Settlement Agreement is improper.

The Homeowners also urge the Court to consider the Bylaws' quorum requirement because the low voter turnout "proves the lack of effort on the part of the [Wildwood] to pass these amendments." (ECF No. 61 at 9). The Homeowners claim that, without importing a quorum requirement, Wildwood has little incentive to encourage adoption of the revised restrictive covenants because the Settlement Agreement inevitably ends with the dismissal of the Homeowners' suits. (ECF No. 61 at 9).

This argument fails to recognize the plain terms of the Settlement Agreement. As discussed earlier, the Settlement Agreement has no requirement that predicates the votes on the number of ballots returned. (ECF No. 60-1 at 4). Had the Homeowners desired such a requirement, the appropriate time to bargain for it was during the Settlement Agreement's creation, not after the Settlement Agreement was implemented and votes executed.

Moreover, the argument fails because the Settlement Agreement also tasks *both parties* to "jointly support and encourage the property owners to adopt the aforementioned amended restrictive covenants." (ECF No. 60-1 at 4). The Homeowners equally bore the responsibility of encouraging voter turnout along with Wildwood. The Homeowners' claim that the Settlement Agreement has placed them at the mercy of Wildwood ignores the fact that they had an equal responsibility to encourage participation in the votes. Rather than attempt to impute a quorum requirement on the vote, the Homeowners' remedy was encouraging residents to participate in the vote before the Settlement Agreement mandated dismissal of the Homeowners' suits.

Moreover, Wildwood's interpretation of Paragraph 12 of the Settlement Agreement upholds the contract's purpose. The Settlement Agreement requires dismissal of the Homeowners' suits if, after two votes, the residents fail to adopt the revised restrictive covenants without regard to the number of voters participating. This fits within the purpose of the Settlement Agreement as a whole, bringing the dispute and litigation between the parties to an end without resulting in a perpetual cycle of votes without any resolution as the Homeowners propose. Accordingly, the Court adopts Wildwood's interpretation of the Settlement Agreement.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **February 7, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE